IN THE UNITED STATES DISTRICT
FOR THE WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

| | | |
|---|---|---|
| BRIGHT CONSTRUCTION, INC. | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | Case No. 4:12-mc-09028-FJG |
| | ) | |
| CARPENTERS DISTRICT COUNCIL | ) | |
| OF KANSAS CITY PENSION FUND | ) | |
| and | ) | |
| MELMORE CONSTRUCTION, INC. | ) | |
| F/K/A DCM CONSTRUCTION, INC., | ) | |
| Respondents. | ) | |

| | | |
|---|---|---|
| KEITH WINN and DONALD E. | ) | |
| GREENWELL, III, TRUSTEES OF THE | ) | |
| CARPENTERS DISTRICT COUNCIL | ) | |
| OF KANSAS CITY PENSION FUND, | ) | |
| a Trust Fund, | ) | |
| and | ) | |
| CARPENTERS DISTRICT COUNCIL | ) | |
| OF KANSAS CITY PENSION FUND, | ) | |
| a Trust Fund, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Case No. 4:13-CV-00181-FJG |
| | ) | |
| BRIGHT CONSTRUCTION, INC., | ) | |
| | ) | |
| Defendant. | ) | |

**CARPENTERS DISTRICT COUNCIL OF KANSAS CITY PENSION FUND'S SUGGESTIONS IN SUPPORT OF MOTION TO COMFIRM AND ENFORCE ARBITRATION AWARD PURSUANT TO 29 U.S.C. §1401(b)(2)**

COMES NOW, Carpenters District Council of Kansas City Pension Fund ("Pension Fund"), by and through its attorneys of record, and for its Suggestions in Support of its Motion to Confirm and Enforce Arbitration Award Pursuant to 29 U.S.C. §1401(b)(2), states as follows:

## I. INTRODUCTION

This action arises out the Pension Fund's claim for payment of withdrawal liability assessed against Bright Construction, Inc. ("Bright") and Melmore Construction, Inc. f/k/a "DCM Construction, Inc." ("DCM").

On February 23, 2011, Bright and DCM were sent a notice and demand for payment of withdrawal liability issued by the Pension Fund in accordance with 29 U.S.C. §1382(2), 1399(b)(1) and 1399(c)(2). The notice advised Bright and DCM that withdrawal liability had been assessed in the lump sum amount of $710,106.00. The notice gave Bright and DCM the option of making a lump sum payment or 16 quarterly payments of $47,612.00 and final quarterly payment of $32,576.00. (See, Carpenters District Council of Kansas City Pension Fund Demand for Payment of Withdrawal Liability to DCM Construction, Inc. and Bright Construction, Inc. dated February 23, 2011, Joint Exhibit No. 10).

Bright and DCM requested a review of the determination of withdrawal liability in accordance with 29 U.S.C. §1399(b)(2)(A)(i), on April 12, 2011. (See, Request for Review of DCM Construction, Inc. and Bright Construction, Inc. dated April 12, 2011, Joint Exhibit No. 11). Pursuant to 29 U.S.C. §1399(b)(2)(B), the Pension Fund completed the review and notified Bright and DCM by letter dated September 9, 2011, that the determination of withdrawal liability assessment was correct and there would be no change in the amount of the withdrawal liability calculation. (See, Carpenters District Council of Kansas City Pension Fund's Response to Request for Review dated September 9, 2011, Joint Exhibit No. 12).

On October 7, 2011, the parties jointly initiated arbitration with American Arbitration Association in accordance with 29 U.S.C. §1401(a)(1). On October 25, 2012, arbitration proceedings were conducted before Arbitrator Mark D. DeBofsky in Kansas City, Missouri. On November 21, 2012, Arbitrator DeBofsky issued an Award which provided that the assessment of withdrawal liability by the Pension Fund against Bright, a successor to DCM, was sustained.

## II. STATEMENT OF FACTS

The parties agreed to a Statement of Facts submitted to the arbitrator prior to the arbitration proceeding. (See, Stipulated Facts, Joint Exhibit No. 131). The Statement of Facts was reviewed and considered by the arbitrator in addition to the testimony presented at the arbitration hearing. (See, Award, Joint Exhibit No. 1, Page 2). The Pension Fund hereby adopts all facts found by the arbitrator in his award. (See, Award, Joint Exhibit No. 1).

## III. STANDARD OF REVIEW

### A. Governing Statutes

The relevant statutes which the Court should bear in mind when considering the Pension Fund's Motion to Confirm and Enforce the arbitration award are: 29 U.S.C. §1392(c); 29 U.S.C. §1401(a)(3)(A); 29 U.S.C. §§1401(b)(2) and 1401(b)(3), and 29 U.S.C. §1401(c).

### B. Standard of Review

The arbitrator made several findings of fact in the award issued. (See, Award, Joint Exhibit No. 1, Pages 2-8). The Eighth Circuit addressed the issue of the standard for review of the arbitrator's factual findings in **Union Asphalts & Roadoils, Inc. v. Mo-Kan Teamsters Pension Fund**, 857 F.2d 1230, 1233 (8th Cir. 1988). "MPPAA provides than any party may seek 'to enforce, vacate, or modify the arbitrator's award' in federal district court…On judicial review, the district court must accept the arbitrator's findings of fact as correct unless rebutted by a clear preponderance of the evidence…Under MPPAA, the district court has full review of the arbitrator's legal determinations. *Id.* "The judicial review provided pursuant to §1401(b)(2) is extremely narrow, because "[i]n any proceeding under subsection (b)…there shall be a *presumption, rebuttable only by a clear preponderance of the evidence*, that the findings of fact made by the arbitrator were correct.' 29 U.S.C. §1401(c)." **Sherwin-Williams Co. v. N.Y. State Teamsters Conference Pension and Retirement Fund**, 158 F.3d 387, 392 (6th Cir. 1998).

The arbitrator made several conclusions of law in both the Decision Denying DCM/Bright's Motion to Dismiss and the award-which incorporated the Decision Denying Motion

to Dismiss. (See, Arbitrator's Decision Denying Motion to Dismiss, Joint Exhibit No. 130, Pages 1-10; see, Award, Joint Exhibit No. 1, Pages 8-12). The Eighth Circuit also addressed the issue of the standard for review of the arbitrator's legal findings in ***Union Asphalts & Roadoils, Inc. v. Mo-Kan Teamsters Pension Fund***, 857 F.2d 1230, 1233 (8th Cir. 1988). An arbitrator's legal conclusions are subject to *de novo* review. See also, ***Trustees of Central Pension Fund of Int'l Union of Operating Engineers and Participating Employers v. Wolf Crane Service, Inc.***, 374 F.3d 1035, 1038 (11th Cir. 2004), recognizing that all of the circuits that have considered this issue have determined that the review of legal issues should be *de novo*.

## IV. ARGUMENT

### 1. The Pension Fund's Motion to Confirm and Enforce is Timely

The Pension Fund's Motion to Confirm and Enforce is brought pursuant to 29 U.S.C. §§1401(b)(2) and 1451(f). 29 U.S.C. §1401(b)(2) provides that an action should be filed within thirty (30) days after issuance to enforce the arbitrator's decision. The application of the appropriate period requiring an enforcement of an arbitrator's decision under these statutes is discussed extensively in ***Trustees of Amalgamated Insurance Fund v. Sheldon Hall Clothing, Inc.***, 863 F.2nd 1020 (3rd Cir. 1988); and ***Central States v. Safeway, Inc.***, 229 F.3rd 605 (7th Cir. 2000).

In ***Sheldon Hall***, The Third Circuit determined that because of the ambiguity in the application of the statutes that an action to enforce an arbitrator's award beyond thirty (30) days is timely under Section 1451. The court was concerned that the limitations for the period was too short and that in the circumstances where an employer who loses an arbitration, and then complies with the terms of the arbitration award for just beyond thirty (30) days, it made little sense to allow said employer to escape the award by merely waiting beyond thirty (30) days and then failing to comply with the award. ***Trustees of Amalgamated Insurance Fund v. Sheldon Hall Clothing, Inc.***, 863 F.2nd 1020.

In *Safeway*, the Seventh Circuit felt the question should be addressed as a statute of limitations rather than a limitation on judicial power, i.e., precluding subject matter jurisdiction, as asserted by Bright. The Seventh Circuit held that the thirty (30) day period was conceived with a limitation period subject to the normal rules of waiver and estoppel. ***Central States v. Safeway, Inc.***, 229 F.3rd 605.

On December 21, 2012, Bright filed its Motion to Vacate or Modify the Arbitration Award. (See, Court Document No. 1). On or about December 31, 2012, counsel for Bright prepared a Notice and Acknowledgement for Service By Mail ("Notice") and forwarded same to Michael G. Newbold as the attorney for the Pension Fund. (See, Notice and Acknowledgement for Service By Mail, attached hereto as Carpenters District Council of Kansas City Pension Fund's Exhibit "A"). On January 7, 2013, the Pension Fund submitted its Suggestions in Opposition to Bright's Motion to Vacate or Modify Arbitration Award. (See, Court Document No. 2).

The Notice stated that "the enclosed summons and complaint are served pursuant to Rule 4 of the Federal Rules of Civil Procedure and Rule 54.16 of the Missouri Supreme Court Rules." However, no summons was served with the Notice by counsel for Bright. Pursuant to Rule 4 of the Federal Rules of Civil Procedure, counsel for the Pension Fund responded to counsel for Bright acknowledging the notice of service of complaint and request for acknowledgement but noted that the Notice was not in compliance with Federal Rule of Civil Procedure Form 6. However, a Waiver of Service of Summons prepared in accordance with Federal Rule of Civil Procedure 4 and Rule 84 was completed by counsel for the Pension Fund and forwarded to counsel for Bright. The letter enclosing same stated that in accordance with provisions of Federal Rule of Civil Procedure 4, an answer or motion would be served by the Pension Fund before March 1, 2013, based on the mailing date of the Notice-December 31, 2012 (within 60 days after December 31, 2012). No response or objection to the Pension Fund's January 25, 2013 letter was received from counsel for Bright.

On February 25, 2013, the Pension Fund filed its Answer to the Motion to Vacate or Modify the Arbitration Award and Counterclaim seeking enforcement of the Arbitrator's Award. (See Court Document No. 7). On April 23, 2013, the Court entered its Order Scheduling the Filing of Motions and Briefs. (See Court Document No. 9).

In sum, Bright sent the Notice referencing an enclosed summons and complaint served pursuant to Rule 4 of the Federal Rules of Civil Procedure but no summons was served with the Notice nor was there a complaint. Counsel for the Pension Fund responded, citing the Federal Rule of Civil Procedure as forming the basis for future proceedings and acted accordingly in filing the Counterclaim in this matter on February 25, 2013, seeking enforcement of the arbitrator's Award. At no time prior to the filing of the Counterclaim did counsel for Bright object to the characterization of the proceedings by Pension Fund's counsel. As such, pursuant to **Sheldon Hall** and **Safeway**, estoppel and waiver is established and the Motion to Confirm and Enforce the Arbitration Award filed by the Pension Fund is timely.

## 2. The Arbitrator Did Not Exceed the Powers to Arbitrate Under 29 U.S.C. §1401(a)(1)

Any dispute between and employer and the plan sponsor of a multiemployer plan concerning a determination made under 29 U.S.C. §§ 1381 through 1399 shall be resolved through arbitration. 29 U.S.C. §1401(a)(1). In arbitration, the arbitrator must presume that the plan's determinations are correct unless the employer shows by the preponderance of the evidence that the determination was unreasonable or clearly erroneous. 29 U.S.C. §1401(a)(3)(A). *See also*, **Concrete Pipe and Products of Cal., Inc. v. Construction Laborers Pension Trust For S. Cal.**, 508 U.S. 602 (1993).

The arbitrator clearly stated in the Award that "The determination made by the Carpenters [Pension Fund] is presumed correct; thus, the burden of proof on this issue rests with DCM and Bright…Carpenters maintains that DCM and Bright are subject to withdrawal liability under a theory of …'successor liability,' and have maintained the asset purchase agreement was structured to evade or avoid liability consistent with 29 U.S.C. §1392(c)." (See,

{00208295;FMW10-168;PET }                                    6
Case 4:12-mc-09028-FJG   Document 25   Filed 09/23/13   Page 6 of 16

Award, Joint Exhibit 1; Page 8). As a result, the arbitrator complied with the requirements of 29 U.S.C. §1401(a)(3)(A) and **Concrete Pipe** in issuing the Award.

### 3. The Successor Doctrine is Applicable to Withdrawal Liability Claims

The successor liability doctrine is an exception to the general common law rule that a corporation that purchases of the assets of another corporation does not assume the seller corporation liabilities. **Upholsters International Union Pension Fund v. Artistic Furniture of Pontiac**, 920 F.2d 1323 (7th Cir. 1990). Successor liability was first developed in the context of the National Labor Relations Act and was subsequently extended to actions brought under MPPAA. **Central States, Southeast and Southwest Areas Pension Fund v. Hayes**, 789 F. Supp 1430 (7th Cir. 1992). Numerous courts have applied the successor liability doctrine for withdrawal liability claims. *See*, **Upholsterers' Int'l Union Pension Fund v. Artistic Furniture of Pontiac**, 920 F.2d 1323; **Chicago Truck Drivers, Helpers and Warehouse Workers Union Pension Fund v. Tasemkin**, 50 F.3d 48 (7th Cir. 1995); **Central States, Southeast and Southwest Areas Pension Fund v. Ehlers Dist., Inc.**, 2012 WL 2726759 (N.D.Ill. 2012); **Automotive Industries Pension Trust Fund v. South City Ford, Inc.**, 2012 WL 1232109 (N.D.Cal. 2012); **Central States, Southeast and Southwest Areas Pension Fund v. TAS Investment Co., Inc.**, 2013 WL 1222042 (N.D.Ill. 2013).

The policies underlying the withdrawal liability provisions of MPPAA support the imposition of withdrawal liability upon a successor entity. As indicated above, successor liability is a common law theory. "Thus, two key factors are necessary: First, that the buyer has notice of the liability prior to the sale; and second, that there is 'sufficient evidence of continuity of operations between buyer and seller." **Einhorn v. M.L. Ruberton Constr. Co.**, 632 F.3d 89, 99 (3rd Cir. 2011).

    A.    Bright Construction Had Notice of the Withdrawal Liability Owed to the Pension Fund.

Although there is no admission during the arbitration of the claims of the Pension Fund, the arbitrator found the facts supported a finding that the principals of DCM and Bright were

aware of issues related to withdrawal liability as to the Pension Fund and therefore had notice of same. (See, Award, Joint Exhibit 1, Pages 10-12). See, *Trustees of the Utah Carpenters and Cement Masons Pension Trust v. Daw, Inc.*, 2009 WL 77856 (C.D. Utah 2009); *Southwest Areas Pension Fund v. Slotky*, 95 F.2d 1369 (7th Cir. 1992).

Rick Bright was a member of the carpenters' union and knew that DCM had a union agreement prior to Bright's entering into the subject asset purchase agreement with DCM. (See Transcript from October 25, 2012 arbitration proceedings, Joint Exhibit 2, Page 188:Line 19 to Page 189:Line 1). "There can be no doubt that these factors have been met here. Rick Bright was a member of the union at the time of the sale and he surely would have known that his benefits were dependent upon his employer's contributions. He had access to DCM's books and records, which undoubtedly demonstrated that pension contributions were made on behalf of DMC's employees. Moreover, DCM-Bright Exhibit 84 (Carpenters Exhibit 34) corroborates that the issue of potential withdrawal liability existed; and Bright was explicitly instructed to consult with counsel." (See, Award, Joint Exhibit 1, Page 11; See, Letter from David Melcher to Rick Bright (undated), Joint Exhibit 37; See, Undated Memorandum from David Melcher to Rick Bright Regarding "Carpenters Agreement," Joint Exhibit 116).

        B.    There was Substantial Continuity of DCM's Operations After Bright Took Control of DCM.

The Supreme Court has held that whether a new employer is the successor of a previous employer is based upon whether there is substantial continuity between the two entities. *Fall River Dyeing & Finishing Corp. v. NLRB*, 482 U.S. 27 (1987). Under the "substantial continuity" test courts look to the following factors: continuity of the workforce, management, equipment and location; completion of work orders begun by the predecessor; and constancy of customers and employees. Continuity of work force is a major consideration in successorship cases. *Audit Services v. Rolfston,* 641 F.2d 757 (9th Cir. 1981), (citing *Howard Johnson Co. v. Hotel Employees*, 417 U.S. 249 (1974).).

{00208295;FMW10-168;PET }　　　　　　　　　　　　　　　8
Case 4:12-mc-09028-FJG   Document 25   Filed 09/23/13   Page 8 of 16

"Nor can there be any reasonable doubt as to the continuity of DCM's operations. The same tools, equipment and employees were involved in both operations. DCM and Bright were in the same location. Bright completed contracts that DCM had started and money was set aside to pay warranty claims. The customers are also substantially the same; and the DCM name has survived; indeed, Bright in most respects continues to do business as DCM Construction, but without the Inc. at the end. The only difference is that Bright has not obligated itself to the terms and conditions of the collective bargaining agreement, including the contributions by the pension and health and welfare plans." (See, Award, Joint Exhibit 1, Page 11).

The arbitrator properly found that the elements of the successor doctrine have been sufficiently established in the following ways: (1) pursuant to ***Daw*** and ***Slotky***, the arbitrator appropriately found that Bright had notice of DCM's the liability prior to the subject asset sale; and (2) pursuant to ***Fall River Dyeing*** and ***Rolfston***, the arbitrator properly found that there is substantial continuity between DCM and Bright. "The successor liability doctrine….squarely places the finger of withdrawal liability on Bright." (See, Award, Joint Exhibit 1, Page 8). As a result, the arbitrator was correct in imposing withdrawal liability upon Bright as a successor entity.

### 4. A Successor Can Have Withdrawal Liability Even When Its Predecessor Has None

A central issue in the arbitration proceeding was whether a complete withdrawal occurred under ERISA. Bright contended that, as a matter of law, a complete withdrawal never took place under the building and construction industry exception set forth in ERISA §4203(b). The stipulated facts in this matter supported the Pension Fund's position that a complete withdrawal under ERISA §4203(b)(2) occurred. Bright continued to perform work in the jurisdiction of the subject collective bargaining agreement(s) as a successor to DCM. Upon DCM's ceasing operations, Bright began operating or continued to operate as a successor to DCM as an employer in the building and construction industry using the DCM trade name.

(See, Award, Joint Exhibit 1, Pages 6-7, 11-12). Therefore, a complete withdrawal did occur under §4203(b)(2).

Under 29 U.S.C. §1381, the facts in this matter establish that a withdrawal has occurred under (b)(1)(A). DCM ceased to have "an obligation to contribute" to the Pension Fund because DCM terminated all employees for which it was obligated to make contributions to the Pension Fund, sold all assets to Bright and ceased all construction operations. (See Transcript from October 25, 2012 arbitration proceedings, Joint Exhibit 2, Pages 156:Lines 1-10; 212:11-13; 221:8-12, and 225:17-25; See Stipulated Facts, Joint Exhibit 131, Paragraphs 7-8). The arbitrator found that Bright, the successor, continues to perform work in the jurisdiction of the collective bargaining agreement, the type for which contributions were previously required. (See, Award, Joint Exhibit 1, Pages 6-7, 11-12). Under the theory asserted by Bright, DCM has continued as Bright. The Pension Fund asserts in this matter that DCM, by terminating its obligation to contribute to the Pension Fund and continuing as disguised continuance as Bright, made a withdrawal from the Pension Fund.

It is inequitable to allow DCM to escape withdrawal liability when the assessment of withdrawal liability was precipitated by the cessation in contributions by DCM which, based upon the stipulated facts, appears to be permanent, i.e., there will be no future contributions to the Pension Fund by DCM or Bright. It is not disputed that Bright had no obligation on its own to contribute to the Pension Fund. Therefore, "the obligation to contribute" has ceased.

Similar situations have been addressed by arbitrators and the federal courts. While not precipitated by the same factual context as this case presents, a similar set of facts existed where an employer became involved in a "labor dispute". The employer argued that it was insulated from withdrawal liability because 29 U.S.C. §1398 provides an employer shall not be considered to have withdrawn from the plan solely because of suspension of contributions under the plan during a labor dispute involving its employees. While not the precipitating facts in this case, the court's discussion in ***Combs v. Adkins & Adkins Coal Co., Inc.***, 597 F.Supp.

122 (D.C.D.C. 1984), is similar to the situation presented by this matter. The court summarized the facts of the case as follows:

> "The facts and circumstances in this case strongly suggest that the defendants had *permanently* withdrawn from the plans. They have admitted that the entity known as Adkins & Adkins Coal Company, Inc. ceased operation in February of 1982, and was reconstituted as P&E Coal Company, Inc., a non-union shop... . Despite the issuance of withdrawal liability notices by the Fund, the defendants have not made any contributions since February of 1982… . Based on this information, the trustees of the Fund reasonably determined that the defendants' failure to make payments constitute a permanent withdrawal from the plans."

*Id.*

The purposes of the Multiemployer Pension Plan Amendment Act underscores the liberal construction of the statutory framework governing withdrawal liability. MPPAA allocates the burden of ensuring the physical integrity of multiemployer pension plans in a rational, non-arbitrary manner. The House Labor and Education Committee, in considering MPPAA, noted "defects in existing law" with regarding to withdrawals by employers from multiemployer funds. In order to remedy this problem, MPPAA's "primary purpose" seeks to "protect retired workers who are participants in such plans against the loss of their pensions." MPPAA achieves these results by providing participants and beneficiaries with the greatest security against benefit loss. ***U.S. Code and Congressional and Administrative News*** (1980), 2918 and 2919.

MPPAA remedied some of the "inequitable and dysfunctional" aspects of the existing law which rewarded employers who withdrew from a plan early while employers who remained were penalized by higher contribution obligations. Additionally, prior to MPPAA, there was no provision for compensation to a plan upon employer withdrawal. ***U.S. Code and Congressional and Administrative News*** at 2928. MPPAA promotes benefit security through amelioration of the financial condition of the multiemployer fund and the elimination of incentives for plan termination. An element of this comprehensive statutory scheme is to require employers who withdraw from a multiemployer fund to continue to fund their fair share of the plan's unfunded pension benefits. ***U.S. Code and Congressional and Administrative News*** at 2921-22. Finding that withdrawal has occurred promotes the purposes of MPPAA.

DCM never specifically repudiated or terminated the collective bargaining agreement in writing or by any blanket statement indicating its intent to terminate the applicable collective bargaining agreement. However, much like the Baltimore Colts professional football club, DCM, by slipping away in the middle of the night (i.e., terminating covered employees and selling all assets), has effectively permanently ceased to have the obligation to contribute to the Pension pursuant to the applicable collective bargaining agreement.

The theory behind the construction industry exemption is that employees will leave the employer who is no longer contributing under the plan and go to work for an employer which is contributing to the plan. Under the facts of this matter, the evidence shows this is not what occurred. It is the position of the Pension Fund that the uncontroverted facts establish that DCM's withdrawal from the Pension Fund occurred. The remedies of successor liability and setting aside a transaction to avoid withdrawal liability are both available to the Pension Fund.

The stipulated facts in this matter support the Pension Fund's position that a complete withdrawal under ERISA §4203(b)(2) occurred because Bright continued to perform work in the jurisdiction of the subject collective bargaining agreement(s) as a successor to DCM. (See, Stipulated Facts, Joint Exhibit 131). Upon DCM's ceasing operations, Bright began operating or continued to operate, as the successor to DCM, as an employer in the building and construction industry. Therefore, a complete withdrawal did occur under §4203(b)(2). *See **Plumbers and Steamfitters Local No. 150 Pension Fund v. Custom Mechanical CSRA, LLC***, 2009 WL 3294793 (S.D.Ga. 2009) (discussing the alter ego/successor doctrine).

Specifically, DCM and Bright pointed to a single fact at arbitration to support their position: since DCM ceased operations, and did not continue to perform work in the jurisdiction of the subject collective bargaining agreement, a complete withdrawal did not occur under ERISA §4203(b). (See, Award, Joint Exhibit 1, Pages 2, 8; See, DCM Construction, Inc. and Bright Construction, Inc. Motion to Dismiss and Brief in Support, Joint Exhibit 128; See, Arbitrator's Decision Denying Motion to Dismiss, Joint Exhibit 130). This position completely

ignores the extensive authority cited above which indicates that the actions and/or liability of DMC and Bright are attributable to one another under a successor liability theory and/or disregard of the subject asset transfer. In reality, much of the case law cited by DCM and Bright in their Motion to Dismiss actually supports the Pension Fund's position in this regard. (See, Award, Joint Exhibit 1, Pages 2, 8; See, DCM Construction, Inc. and Bright Construction, Inc. Motion to Dismiss and Brief in Support, Joint Exhibit 128; See, Arbitrator's Decision Denying Motion to Dismiss, Joint Exhibit 130).

It is clear that a complete withdrawal occurred under ERISA §4203(b) because Bright is a mere successor entity of DCM and because the subject asset sale should be avoided under 29 U.S.C. §1392(c). As is the case here, extensive authority supports the Pension Fund's position that Bright is responsible for withdrawal liability to the Pension Fund under ERISA due to Bright's continued operation as an employer in the building and construction industry. Additionally, "[t]he district courts that have addressed the subject [of applicability of the building and construction industry exception]…all hold that this defense is subject to MPPAA's [ERISA's] mandatory arbitration requirement." ***Sheet Metal Workers' National Pension Fund v. Palladium Equity Partners, LLC***, 722 F.Supp.2d 854, 874-5 (E.D.Mich.2010).

Bright attempted at arbitration to separate these issues from one another and present the facts in a narrow light which suggested that withdrawal liability cannot be assessed to Bright because, if Bright was successor to DCM, then DCM never ceased operations in the first place. Bright suggested that, as a matter of law, there was no withdrawal liability if the stipulated facts were viewed in such a narrow and isolated manner. Bright further suggested that, if there was any successor liability, then the proper remedy was a standard case for collection of delinquent employee fringe benefit plan contributions under ERISA §515. Despite presenting the facts in this manner, *Bright offered no authority to support this argument.*

The issue of complete withdrawal cannot be viewed in such a narrowly and isolated matter. As the authority cited by the Pension Fund provides, the conduct of Bright is attributable

to both entities when viewed broadly under ERISA. Bright argues that no complete withdrawal occurred when DCM ceased to have an obligation under the subject collective bargaining agreement(s) after it terminated operations because DCM was not in violation of the building and construction industry exception provided in ERISA §4203(b)(2). However, under ERISA §4203(b)(2), the analysis of Bright's actions does not stop there. The stipulated facts show that Bright, as the successor and/or beneficiary of a transaction to evade withdrawal liability, continued substantially the same operations as those engaged in by DCM but merely did so under the cover of a new entity. (See, Award, Joint Exhibit 1, Page 11-12). As a result, Bright continued DCM's operations as an employer in the building and construction industry in violation of ERISA §4203(b)(2).

If Bright's narrow and isolated view of withdrawal liability were an accurate reflection of the law, there could essentially never be a case in which one entity could be found liable for another entity's withdrawal liability under ERISA §4203(b). However, as stated above, there is abundant authority to indicate that the opposite is true and that the conduct of DCM and Bright should be viewed together as a whole to determine the appropriate remedies for a complete withdrawal under ERISA §4203(b). The arbitrator correctly applied such authority to reach the conclusion that Bright owes withdrawal liability to the Pension Fund as the successor to DCM.

### 5. A Principal Purpose of the Sale from DCM to Bright Was to Avoid Withdrawal Liability

"If a principal purpose of any transaction is to evade or avoid liability under this part, this part shall be applied (and liability shall be determined and collected) without regard to such transaction." 29 U.S.C. 1392(c). The term "purpose" is not defined in the statute, and the word must therefore be construed in accordance with its ordinary and natural meaning, **U.S. v. Alvarez-Sanchez**, 511 U.S. 350, 357 (1994); and consider "the overall policies and objectives of the statute." **Brown v. Gardner**, 513 U.S. 115, 117-19 (1994).

Courts confronting this issue determined that section 1392(c) requires knowledge, intent or awareness of the withdrawal liability for the transaction to be disregarded. *See*, e.g.,

***SUPERVALU, Inc. v. Bd. of Trs. of the Southwestern Pa. & W. Md. Area Teamsters & Emplrs. Pension Fund***, 500 F.3d 334, 341 (3d Cir. 2007); ***Santa Fe Pac. Corp. v. Central States, Southeast & Southwest Areas Pension Fund***, 22 F.3d 725, 727 (7th Cir. 1994) ("The issue is purpose, a state of mind inferred from testimony and other evidence.").

> "[I]f a pension fund….is adversely affected by the acts of any party who has attempted to 'evade or avoid' liability under [ERISA], then [ERISA] shall be applied 'without regard to such transaction'…[A]ny assets that were transferred in order to 'evade or avoid liability' *as well as the parties to whom they were improperly transferred*, must be within the reach of the statute. Further, to apply the [ERISA] 'without regard to such transaction,' the transferor entity must be deemed to be in possession of improperly transferred assets. Those assets must therefore be recoverable from the parties to whom they have been illegitimately transferred. Those parties thus become 'parties under this subtitle' within the meaning of [ERISA]."

***Board of Trustees, Sheet Metal Workers' National Pension Fund v. Illinois Range, Inc.***, 186 F.R.D. 498, (N.D.Ill. 1999), 44 Fed.R.Serv.3d 714, 23 Employee Benefits Cas. 1525, (*citing*, *IUE AFL-CIO Pension Fund v. Hermann*, 9 F.3d 1049 (2nd Cir. 1993)).

The arbitrator found that a principal purpose of DCM's sale of its assets to Bright was to avoid its obligation(s) to the Fund under the collective bargaining agreement and to avoid any withdrawal liability owed the Fund. (See, Award, Joint Exhibit 1, Pages 2-7, 11-12). The arbitrator determined that Bright, as the successor to DCM, was responsible for DCM's obligation(s). "While there is no smoking gun admission of an intent to avoid withdrawal liability, the evidence establishes that the purchaser, Bright, had such an intent….Bright Construction, Inc. remains a going concern that was acquired at what was essentially a fire-sale price though a seller-financed transaction." (See, Award, Joint Exhibit 1, Pages 11-12).

As set forth above, it is clear that the arbitrator's award should be confirmed and enforced pursuant to 29 U.S.C. §1401(b)(2) because the arbitrator's findings of fact and conclusions of law were correct. The arbitrator properly found that Bright is responsible for DCM's withdrawal under both a theory of successor liability and intent to avoid withdrawal liability under 29 U.S.C. §1392(c). As a result, this Court should confirm and enforce the arbitrator's award in the amount of $710,106.00 plus interest and the Pension Fund's costs and attorneys' fees incurred.

WHEREFORE, Respondent Carpenters District Council of Kansas City Pension Fund prays this Court grant its Motion to Confirm and Enforce Arbitration Award Pursuant to 29 U.S.C. §1401(b)(2), and for any other relief the Court deems appropriate.

ARNOLD, NEWBOLD, WINTER & JACKSON, P.C.

/s/ Michael G. Newbold
Michael G. Newbold, MO Bar No. 25523
Paul E. Torlina, MO Bar No. 52798
1125 Grand Boulevard, Suite 1600
Kansas City, Missouri 64106
Telephone: 816-421-5788
Facsimile: 816-471-5574
*Attorneys for Respondent Carpenters District Council of Kansas City Pension Fund*

**CERTIFICATE OF SERVICE**

I hereby certify that on the 23rd day of September, 2013, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which provided a copy to the following: Aaron J. Racine, MONACO, SANDERS, GOTFREDSON, RACINE & BARBER, L.C. AT ajracine@kcattorneys.net; *Attorney for Plaintiff Bright Construction, Inc.*; and Robert A. West, HAYNES BENEFITS, P.C., at west@haynesbenefits.com, *Attorney for Defendant Melmore Construction, Inc. f/k/a DCM Construction, Inc.*

/s/ Michael G. Newbold
Michael G. Newbold