IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

| | |
|---|---|
| **BRIGHT CONSTRUCTION, INC.,** | ] |
| Petitioner, | ] |
| vs. | ] Case No.4:12-MC-09028-FJG |
| **CARPENTERS DISTRICT COUNCIL OF KANSAS CITY PENSION FUND,** *ET AL.*, | ] |
| Respondents. | ] |
| **KEITH WINN and DONALD E. GREENWELL, III, TRUSTEES OF THE CARPENTERS DISTRICT COUNCIL OF KANSAS CITY PENSION FUND,** | ] |
| and | ] |
| **CARPENTERS DISTRICT COUNCIL OF KANSAS CITY PENSION FUND,** | ] |
| Plaintiffs, | ] |
| vs. | ] Case No. 4:13-CV-00181-FJG |
| **BRIGHT CONSTRUCTION, INC.,** | ] |
| Defendant. | ] |

**PETITIONER BRIGHT CONSTRUCTION, INC.'S REPLY SUGGESTIONS
IN SUPPORT OF ITS MOTION TO VACATE OR MODIFY ARBITRATION
AWARD PURSUANT TO 29 U.S.C. 1401(b)(2) AND SUGGESTIONS IN OPPOSITION
TO RESPONDENT CARPENTERS DISTRICT COUNCIL OF KANSAS CITY
PENSION FUND'S MOTION TO CONFIRM AND ENFORCE ARBITRATION AWARD**

COMES NOW Petitioner Bright Construction, Inc., by and through counsel, and offers the following Reply Suggestions in Support of its Motion to Vacate or Modify Arbitration Award pursuant to 29 U.S.C. 1401(b)(2), as well as Suggestions in Opposition to Respondent Carpenters District Council of Kansas City Pension Fund's Motion to Confirm and Enforce Arbitration Award.

## INTRODUCTION

The arbitration award at issue in this case (hereinafter the "Award") is before this Court because the arbitrator engaged in a faulty legal analysis in assessing withdrawal liability pursuant to 29 U.S.C. §1381 *et seq.* against Petitioner Bright Construction, Inc. (hereinafter "Bright"). Respondent Carpenters District Council of Kansas City Pension Fund (hereinafter "Pension Fund") has adopted the same leaps of logic and faulty reasoning in support of its position to hold on to an award that should be vacated or modified in favor of Petitioner Bright. Both the arbitrator and Respondent Pension Fund have misapplied the doctrine of successor liability, mistakenly relying on it as grounds to impose independent liability on the part of Petitioner Bright where no withdrawal liability was found on the part of its predecessor, DCM Construction, Inc. Additionally, the arbitrator failed to apply – or even consider – the application of the construction industry exemption to withdrawal liability set forth in 29 U.S.C. §1383(b), resulting in legal error in the Award.

Respondent Pension Fund raises additional issues in its Motion to Confirm and Enforce Arbitration Award, specifically suggesting to the Court that "a successor can have withdrawal liability even when its predecessor has none", and that "a principal purpose of the sale from DCM to Bright was to avoid withdrawal liability". These contentions of Respondent Pension Fund are responded to herein.

Because the various competing motions of the parties turn on related issues, Petitioner Bright offers these combined Reply Suggestions to its Motion to Vacate or Modify Arbitration Award as well as Suggestions in Opposition to Respondent Pension Fund's Motion to Confirm and Enforce Arbitration Award.

Petitioner Bright stands silent on the Motion to Confirm Arbitration Award filed by Respondent Melmore Construction, Inc.

## ARGUMENT AND AUTHORITIES

### I. Standard of Review

Under the Multiemployer Pension Plan Amendments Act of 1980 (hereinafter "MMPPA") which govern this action, this Court enjoys an unlimited *de novo* review of the arbitrator's legal findings in the Award. *Union Asphalts & Roadoils, Inc. v. MO-KAN Teamsters Pension Fund*, 857 F.2d 1230, 1233 (8th Cir. 1988), *cert. denied*, 490 U.S. 1022 (1989), citing *Trustees of the Amalgamated Ins. Fund v. Geltman Indus., Inc.,* 784 F.2d 926, 928-29 (9th Cir.), *cert. denied,* 479 U.S. 822, 107 S.Ct. 90, 93 L.Ed.2d 42 (1986); *Board of Trustees of the W. Conference of Teamsters Pension Trust Fund v. Thompson Bldg. Materials, Inc.,* 749 F.2d 1396, 1405-06 (9th Cir.1984), *cert. denied,* 471 U.S. 1054, 105 S.Ct. 2116, 85 L.Ed.2d 481 (1985); *I.A.M. Nat'l Pension Fund Benefit Plan C v. Stockton Tri Indus.,* 727 F.2d 1204, 1207 n. 7 (D.C.Cir.1984) (*Stockton Tri Indus.*); *Republic Indus., Inc. v. Teamsters Joint Council No. 83 of Va. Pension Fund,* 718 F.2d 628, 641 (4th Cir.1983), *cert. denied,* 467 U.S. 1259, 104 S.Ct. 3553, 82 L.Ed.2d 855 (1984).

### II. The Arbitrator Failed to Apply or Consider the Construction Industry Exemption contained in 29 U.S.C. §1383(b), and Successor Liability Cannot be Imposed Where a Predecessor is Found to Have No Liability.

The Award notes that in the underlying arbitration Respondent Pension Fund "maintains that DCM and Bright are subject to withdrawal liability under a theory of 'alter ego' or 'successor liability,' and have maintained the asset purchase agreement was structured to evade or avoid liability consistent with 29 U.S.C. §1392(c)." [Arbitrator's Award, pg. 8 – Joint Exhibit 1]. The award goes on to state "However, now that there has been a hearing, it is apparent to the arbitrator that the focus here should be on successor liability because the evidence does not establish that DCM and Bright are alter egos of one another." [Arbitrator's Award, pg. 9 – Joint Exhibit 1]. Thus, alter ego as a basis for the imposition of withdrawal liability on either Petitioner Bright or DCM was expressly found to be baseless, but the arbitrator clearly stated that "successor liability" would be the focus of

his legal analysis in order to "squarely [place] the finger of withdrawal liability on Bright." [Arbitrator's Award, pg. 10 – Joint Exhibit 1].

There is one overarching, fundamental flaw with the arbitrator's application of the successor liability doctrine in this case. Successor liability, while it can be imposed under certain circumstances as an exception to the common law doctrine that *bona fide* sales of assets insulated a buyer against liability for the debts of the seller, does not create an independent liability on the part of a successor where none existed with the predecessor. There must be an underlying liability on the part of a predecessor for a successor to succeed to. In this case, there is no underlying liability. In fact, the arbitrator expressly found that DCM was *not* liable for its own withdrawal liability under 29 U.S.C. §1381 *et seq.*, but that Petitioner Bright was. This is logically and legally impossible.

First, the arbitrator expressly found that no alter ego grounds existed for withdrawal liability as to either Petitioner Bright or DCM as stated above. Next, the arbitrator expressly found that there was no evidence that DCM had any intent to evade or avoid its withdrawal liability when it structured the sale of its assets to Petitioner Bright; in fact, the arbitrator found the evidence "establishes that [DCM] lacked sophistication of knowledge of withdrawal liability; and given the tragic circumstances of her husband's illness and subsequent death, [the principal of DCM's] concern was to obtain some value from the business her husband had built in order to maintain her family's financial well-being. Indeed, [the principal of DCM] testified convincingly that she had no desire to discontinue union representation because of her family's union connections." [Arbitration Award, pp. 11-12 – Joint Exhibit 1]. Therefore, there was a legal finding by the arbitrator that there was no basis to impose withdrawal liability on DCM pursuant to 29 U.S.C. §1392(c), as there was no intent to structure the sale of DCM's assets to Petitioner Bright to evade or avoid such liability. It can be safely assumed that the arbitrator was relying on the holding of <u>Santa Fe Pacific Corp. v. Central States, Southeast and Southwest Areas Pension Fund</u>, 22 F.3d 725, 729-30 (7th Cir. 1994) in reaching this legal conclusion, as he cites it in his ruling on Petitioner Bright's and DCM's Joint Motion to

4

Dismiss filed in the underlying arbitration. [Arbitrator's Decision Denying Motion to Dismiss, pg. 6 – Joint Exhibit 130].[1]

The arbitrator was correct in these two findings and Petitioner Bright does not take issue with them. However, the arbitrator's legal analysis thereafter failed on two critical issues. First, throughout the underlying arbitration, Petitioner Bright and DCM repeatedly asserted the "construction industry exemption" found in 29 U.S.C. §1383(b) as an absolute defense to the Respondent Pension Fund's claims. The pertinent portions of 29 U.S.C. §1383 are as follows:

> (a) Determinative factors
> For purposes of this part, a complete withdrawal from a multiemployer plan occurs when an employer--
> **(1)** permanently ceases to have an obligation to contribute under the plan, or
> **(2)** permanently ceases all covered operations under the plan.
>
> (b) Building and construction industry
> **(1)** Notwithstanding subsection (a) of this section, in the case of an employer that has an obligation to contribute under a plan for work performed in the building and construction industry, a complete withdrawal occurs only as described in paragraph (2), if--
> **(A)** substantially all the employees with respect to whom the employer has an obligation to contribute under the plan perform work in the building and construction industry, and
> **(B)** the plan--
> **(i)** primarily covers employees in the building and construction industry, or
> **(ii)** is amended to provide that this subsection applies to employers described in this paragraph.
> **(2)** A withdrawal occurs under this paragraph if--
> **(A)** an employer ceases to have an obligation to contribute under the plan, and
> **(B)** the employer--
> **(i)** continues to perform work in the jurisdiction of the collective bargaining agreement of the type for which contributions were previously required, or
> **(ii)** resumes such work within 5 years after the date on which the obligation to contribute under the plan ceases, and does not renew the obligation at the time of the resumption.

---

[1] "The statutory criterion is not whether the transaction is a sham, having no purpose other than to defeat the goals of the Multiemployer Pension Plan Amendments Act by leaving the other employers in the multiemployer pension plan holding the bag. It is whether the avoidance of withdrawal liability by the seller (not necessarily by the purchaser as well) is one of the principal purposes of the transaction."

The parties in the underlying arbitration stipulated that "[a]ll employees of DCM Construction, Inc., with respect to whom DCM Construction, Inc. has an obligation to contribute to the Carpenters District Council of Kansas City Pension Fund, perform work in the building and construction industry as described in ERISA Section 4203(b), 29 U.S.C. 1383(b)." The parties further stipulated that "Immediately after entering into the Asset Purchase Agreement, DCM Construction, Inc. changed its name to Melmore Construction, Inc. and ceased its business operations with the exception of collecting its retained accounts receivable and the periodic payments due from the sale of its assets to Bright Construction, Inc." [Exhibit A to DCM's and Petitioner Bright's Joint Motion to Dismiss and Brief in Support, paragraphs 9 and 8 – Joint Exhibit 128; Arbitrator's Decision Denying Motion to Dismiss, pg. 2 – Joint Exhibit 130; Transcript of Arbitration Hearing, 8:1-11 – Joint Exhibit 2; Arbitration Award, pp.2-3, 6 – Joint Exhibit 1].

Thus, the parties in this matter all agreed that the construction industry exemption applied to DCM, and not just because "substantially all" the employees with respect to whom DCM had an obligation to contribute under the plan performed work in the building and construction industry, but "all" of them did. Applying the provisions of 29 U.S.C. §1383(b)(2), no complete withdrawal took place with respect to DCM and Respondent Pension Fund, because DCM – the employer – did not continue to perform work in the jurisdiction of the collective bargaining agreement of the type for which contributions were previously required. Unfortunately, and despite it being asserted by DCM and Petitioner Bright both in their Motion to Dismiss and at their trial brief submitted to the arbitrator prior to the arbitration hearing, the arbitrator consistently ignored the construction industry exemption and failed utterly to apply it to the stipulated facts of the case. For example, in his ruling on DCM's and Petitioner Bright's Motion to Dismiss, the arbitrator noted that "DCM and Bright disagree and maintain that Bright was a *bona fide* purchaser and that the building

6
Case 4:12-mc-09028-FJG   Document 28   Filed 10/07/13   Page 6 of 17

and construction industry exemption contained in 29 U.S.C. § 1383(b) applies." The statute is then set out in a footnote, but is never discussed or mentioned again. [Arbitrator's Decision Denying Motion to Dismiss, pg. 4 – Joint Exhibit 130]. In the Award, the arbitrator merely states as part of the "Issue" to be decided "while DCM and Bright maintain that no withdrawal occurred under the construction exemption to the MPPAA." [Arbitration Award, pg. 8 – Joint Exhibit 1]. The only other mention of the construction industry exemption in the Award follows in the next paragraph under the "Discussion" heading: "Also at issue is the applicability of the building and construction industry exemption contained in 29 U.S.C. §1383(b)." Again, the statue is set forth in a footnote but never mentioned again. [Arbitration Award, pg. 8 – Joint Exhibit 1]. While acknowledging that DCM and Petitioner Bright have asserted the construction industry exemption as a defense, and noting that its applicability is "at issue", the arbitrator never again mentions it much less analyzes whether it is applicable to the stipulated or other facts adduced at the arbitration hearing. This failure to address the application of the construction industry exemption renders the Award fundamentally flawed. By failing to rule one way or another on the issue and in the ultimate context of the Award, the arbitrator effectively rendered a legal conclusion that the construction industry exemption did not apply.

The construction industry exemption was the issue in the 8th Circuit *Union Asphalt* case cited *supra*. Asked to determine whether an employer alleged to have withdrawn from a pension fund was engaged in work in the "building or construction industry" as set forth in 29 U.S.C. §1383(b), the court noted that "[u]nder certain circumstances, however, the [MPPAA] excuses employers in the building and construction industry from withdrawal liability. For example, an employer in the building and construction industry that goes out of business does not have to pay withdrawal liability to a multiemployer pension plan at that

time." <u>Union Asphalts</u>, at 1232. This is precisely the argument DCM and Petitioner Bright made in the underlying arbitration, only to have it ignored by the arbitrator.

This application of the construction industry exemption has been undertaken in other circuits as well. On the issue of whether an employer is an employer qualified for the exemption for example, an unreported opinion from the Northern District of Illinois held that "[T]o qualify for the building and construction exemption, defendants have to establish that 'substantially all' of the employees for whom it contributed to the Fund were building and construction industry employees." <u>Cent. States, Se. & Sw. Areas Pension Fund v. Holloway Const. Co.</u>, 98 C 5667, 2000 WL 126893 (N.D. Ill. Feb. 1, 2000), citing <u>Central States, Southeast & Southwest Areas Pension Fund v. Robinson Cartage Co.,</u> 55 F.3d 1318, 1321 (7th Cir.1995). The 7th Circuit has held that "substantially all" means 85% or more of employees. <u>Robinson Cartage,</u> 55 F.3d at 1321 (citing *Continental Can Co. v. Chicago Truck Drivers,* 916 F.2d 1154, 1160 (7th Cir.1990)). Any argument by Respondent Pension Fund that the construction industry exemption does not apply to DCM (and by extension, Petitioner Bright) is frivolous based both on the stipulated facts in the underlying arbitration and the applicable case law. Examining the issue of an employer continuing to perform work of the type for which contributions were previously required after an obligation to contribute to a pension fund ceases, in *Oregon-Washington Carpenters-Employers Pension Trust Fund v. BQC Construction, Inc. Hardware Service*, 485 F.Supp.2d 1206 (D. Oregon 2007) the District Court was asked to determine whether an arbitration award applying the construction industry exemption was flawed. In so doing, the Court held that under the MPPAA employers who have ceased making contributions to pension plans on behalf of building and construction industry employees are subject to withdrawal liability only if they continue to perform work in the jurisdiction of the collective bargaining agreement of the type for which

contributions were previously required, or if they resume such work within five years after the date on which the obligation to contribute ceased. *Id.*, at 1211.

In this case, the construction industry exemption clearly applied to DCM (and by extension, Petitioner Bright). All of DCM's employees with respect to whom DCM had an obligation to contribute to Respondent Pension Fund performed work in the building and construction industry. DCM sold its assets, ceased its business operations except for collections of accounts receivable and installment payments due from Petitioner Bright under the asset purchase agreement, and terminated its employees. DCM's obligations to contribute to Respondent Pension Fund ceased and it did not continue to perform work in the jurisdiction of the collective bargaining agreement of the type for which contributions were previously required. These facts were stipulated to by the parties, and the arbitrator cited no evidence or factual determinations to the contrary. Therefore, no complete withdrawal occurred pursuant to 29 U.S.C. §1381 *et seq.* on the part of DCM and no withdrawal liability could be imposed. The arbitrator simply ignored the construction industry exemption in order to find withdrawal liability in the underlying arbitration action.

The second flawed legal ruling reached by the arbitrator in the Award flows from his failure to apply the construction industry exemption. As stated above, the arbitrator found no alter ego basis for imposing withdrawal liability on DCM or Petitioner Bright. The arbitrator further found no attempt to evade or avoid withdrawal liability by DCM as prohibited by 29 U.S.C. §1392(c). The arbitrator then ignored any application or discussion of the construction industry exemption to the facts of this case, and in the Award itself, never finds any liability for anything on the part of DCM. To the contrary, the Award holds that only Petitioner Bright is found liable for the withdrawal liability asserted by Respondent Fund and the ensuing interest, costs and attorneys' fees. How is Petitioner Bright found liable for

9

withdrawal liability when DCM is specifically found to be not liable? Through the misapplication of "successor liability".

Both the arbitrator in the Award and Respondent Pension Fund in its pleadings have misapplied the doctrine of successor liability in this case. Successor liability does not create an independent liability where none existed on the part of a predecessor. To the contrary, by its very nature, the courts in certain circumstances are imposing liability on a successor for liabilities of a predecessor that the successor *would not normally be liable for*. There is not one case that can be cited for the proposition that the successor liability doctrine asserted by the arbitrator and Respondent Pension Fund creates liability where none existed – it merely shift an existing liability from one party to another.

To illustrate this point, the Court is encouraged to look at the factual background of the successor liability cases cited by the arbitrator and Respondent Pension Fund. For example, the predecessor in <u>Chicago Truck Drivers, Helpers and Warehouse Union Workers Union Pension Fund v. Tasemkin</u>, 59 F.3d 48 (7th Cir. 1995) was an employer under the MPPAA whose assets were sold after a bankruptcy proceeding to a successor, and the employer's liability had already been acknowledged as part of the bankruptcy proceeding. <u>Central States, Southeast and Southwest Areas Pension Fund v. Ehlers Dist., Inc.</u>, 2012 WL 2726759 (N.D.Ill. 2012) involved an employer who was found to liable for withdrawal liability in a judgment in a civil proceeding, and the assets of the employer were sold after the entry of the judgment. The holding in <u>Automotive Industries Pension Trust Fund v. South City Ford, Inc.</u>, 2012 WL1232109 (N.D.Cal. 2012) was a decision involving a motion to dismiss filed by a potential successor, and the ruling was limited to denying the dismissal because a sufficient claim had been asserted that the alleged successor could potentially be found liable for the liability of the alleged predecessor – there was no finding of liability in this decision on the part of the alleged successor as it was procedural in nature. A successor

who was assigned certain assets by a predecessor after the predecessor's liability was established by a judgment was found to be liable in <u>Central States, Southeast and Southwest Areas Pension Fund v. TAS Investment Co., LLC</u>, 2013 WL 1222042 (N.D.Ill. 2013). <u>Central States, Southeast and Southwest Areas Pension Fund v. Hayes</u>, 789 F.Supp.1430 (7th Cir. 1992) presented a situation in which a predecessor who failed to arbitrate withdrawal liability claims and ultimately entered into a consent judgment with regard to its withdrawal liability. Only after the failure to initiate arbitration and the entry of the consent judgment did the alleged successor begin doing business. The liability of the predecessor in <u>Upholsterers' Int'l Union Pension Fund v. Artistic Furniture of Pontiac</u>, 920 F.2d 1323 (7th Cir. 1990) was established in litigation two (2) years prior to the Court discussing the successor liability doctrine in a decision that merely denied summary judgment relief to both parties and remanded the matter for trial. <u>Einhorn v. M.L. Ruberton Constr. Co.</u>, 632 F.3d 89 (3d Cir. 2011) involved questions of successor liability for an alleged successor that purchased assets from a predecessor who had acknowledged its withdrawal liability to a pension fund while negotiations were ongoing between the three parties.

All of the cases cited by the arbitrator and Respondent Pension Fund therefore have two things in common: First, the withdrawal liability of the predecessor had been confessed or established prior to the assignment or sale of assets to the alleged successor. Second, none of these cases involved the application of the construction industry exemption from withdrawal liability. These cases can therefore all be distinguished from the present case where DCM's liability had not (and after the entry of the Award, was not) established, and where the construction industry exemption - had it been properly applied by the arbitrator - would absolve DCM (and therefore Petitioner Bright) from any withdrawal liability under 29 U.S.C. §1381 *et seq.*

Petitioner Bright does acknowledge that the cases cited by Respondent Pension Fund stand for the proposition that a successor, under prescribed circumstances, can be found liable for the withdrawal liability of a predecessor. However, before any analysis of the doctrine of successor liability or its applicability to the facts of this case can be undertaken, the withdrawal liability of the predecessor must be established. In this case, the arbitrator failed to find any liability on the part of DCM, Petitioner Bright's alleged predecessor, and the Award is devoid of any such finding. Further, the arbitrator ignored the applicability of the construction industry exemption to the stipulated facts of this case, which was clearly erroneous. Both of these legal flaws in the Award beg the question of how can Petitioner Bright be deemed to have succeeded to the withdrawal liability of DCM when the arbitrator found that DCM had no withdrawal liability? The Award is legally and logically flawed and should be vacated or modified in favor of Petitioner Bright.

In specific response to Respondent Pension Fund's assertion in its Suggestions in Support of its Motion to Confirm and Enforce Arbitration Award that a successor can have withdrawal liability even when its predecessor has none, Petitioner Bright notes that this merely demonstrates confusion with respect to the application of the successor liability doctrine. Respondent Pension Fund would have the Court believe that because the arbitrator found that the facts of the case satisfied the elements for the successor doctrine to apply, that Petitioner Bright became for all intents and purposes DCM. This is not the case. As discussed above, the arbitrator clearly ruled that there was no colorable alter ego claim in this case. DCM and Petitioner Bright were and are distinct legal entities. As such, unless DCM was subcontracting with Petitioner Bright or otherwise paying Petitioner Bright to do work for DCM in the building and construction industry, DCM ceased to perform work in the jurisdiction of the collective bargaining agreement of the type for which contributions were previously required. Respondent is confusing alter ego with successor. Respondent Pension

Fund's citation to <u>Plumbers and Steamfitters Local No. 150 Pension Fund v. Custom Mechanical CSRA, LLC</u>, 2009 WL 3294793 (S.D.Ga. 2009) is misplaced; this case involved collecting withdrawal liability that was never contested through arbitration proceedings from members of a control group. It does not stand for the proposition that someone found to be a successor through the exception to common law is the same thing as an alter ego. If Respondent Pension Fund's interpretation on this point is accepted by the Court, there would be no circumstances under which the construction industry exemption would ever be applicable, rendering it meaningless. Congress presumably does not enact laws with no purpose. The construction industry exemption does not read "except where the successor liability doctrine" has been found to apply. Nor does the statute include language, which Respondent Pension Fund implies that it does, that if the employees from a union employer who ceases doing business go to work for a non-union employer, then the construction industry exemption does not apply.

**III.  The "Evade/Avoid" Analysis of 29 U.S.C. §1392(c) Does Not Apply to Petitioner as the Buyer in its Transaction with DCM Construction, Inc., Nor Does it Afford Any Relief to Respondent Pension Fund from Petitioner.**

Petitioner Bright further specifically responds to Respondent Pension Fund's assertion that the Award found liability on Petitioner Bright's part through a finding that Petitioner Bright had, as a principal purpose of the transaction purchasing DCM's assets, the intent to evade or avoid withdrawal liability. First and foremost, the clear language of the Award does not support such a position: "While there is no smoking gun admission of an intent to avoid withdrawal liability, the evidence establishes that the purchaser, Bright, had such an intent." [Arbitration Award, pg. 11 – Joint Exhibit 1]. Importantly, the arbitrator did not find that such an intent on the part of Petitioner Bright was "a principal purpose of [the] transaction", which is the statutory requirement of 29 U.S.C. §1392(c). Even if the arbitrator

had made such a finding, the case law does not support Respondent Pension Fund's position that the buyer of assets having as a principal purpose of a transaction such an intent to evade or avoid withdrawal liability establishes liability on the part of such buyer.

The recent decision in <u>Sun Capital Partners III, LP v. New England Teamsters & Trucking Indus. Pension Fund</u>, 724 F.3d 129, 149 (1st Cir. 2013) is illustrative of Petitioner Bright's point:

> "We hold that § 1392(c) cannot serve as a basis to impose liability on the [buyers] because, by applying the remedy specified by the statute, the [pension fund] would still not be entitled to any payments from the [buyers] for withdrawal liability. We begin (and ultimately end) our analysis by reviewing the plain language of § 1392(c). *See* <u>United States v. Kelly</u>, 661 F.3d 682, 687 (1st Cir.2011) ("We begin our analysis by reviewing the plain language of the [statute].").
>
> The language of § 1392(c) instructs courts to apply withdrawal liability "without regard" to any transaction the principal purpose of which is to evade or avoid such liability. 29 U.S.C. § 1392(c). The instruction requires courts to put the parties in the same situation as if the offending transaction never occurred; that is, to erase that transaction. It does not, by contrast, instruct or permit a court to take the affirmative step of writing in new terms to a transaction or to create a transaction that never existed. In order for the [pension fund] to succeed, we would have to (improperly) do the latter because simply doing the former would not give the [pension fund] any relief, but would only sever any ties between the [buyers] and [seller]."

The decision in the underlying District Court ruling - <u>Sun Capital Partners III, LP v. New England Teamsters and Trucking Industry Pension Fund</u>, 903 F.Supp.2d 107 (D.Mass 2012) – is perhaps even more compelling. The District Court undertook a lengthy and detailed review of the legislative history behind 29 U.S.C. §1392(c) as well as a thoughtful and thorough analysis of the language of the statute and its potential impact to suggest that the statute is aimed at sellers, not investors. The District Court also distinguishes <u>SUPERVALU, Inc. v. Bd. Of Ts. Of the Southwestern Pa. & W. Md. Area Teamsters & Employers Pension Fund</u>, 500 F.3d 334 (3d Cir. 2007), a case cited by

14
Case 4:12-mc-09028-FJG   Document 28   Filed 10/07/13   Page 14 of 17

Respondent Pension Fund in its Suggestions in Support of its Motion to Confirm and Enforce Arbitration Award. In that case, the <u>Sun Capital</u> Court noted that the employer itself was under scrutiny for an "evade or avoid" analysis in renegotiating its collective bargaining agreement, and no buyer or investor was involved in the transaction.

The view of the District Court in the <u>Sun Capital</u> case is further bolstered by another case cited by Respondent Pension Fund - <u>Santa Fe Pacific Corp. v. Central States, Southeast and Southwest Areas Pension Fund</u>, 22 F.3d 725, 727-28 (7th Cir. 1994). If Respondent cites this case to support its position, such reliance is misplaced. In the <u>Santa Fe</u> ruling at pages 727-728, the 7th Circuit reasons that the provisions of 29 U.S.C. §1392(c) are to be applied to sellers in sale transactions, not buyers:

> "The imposition of withdrawal liability in a sale of business situation requires only that *a* principal purpose of the sale be to escape withdrawal liability. It needn't be the only purpose; it need only have been one of the factors that weighed heavily in the <u>seller's</u> thinking. We can find no decisions discussing situations in which there is more than one principal (major, weighty, salient, important) purpose, but we would be doing violence to the language and the purpose of the statute if we read "a principal" as "the principal." The clear import of "a principal" is to let <u>the employer</u> off the hook even if one of <u>his</u> purposes was to beat withdrawal liability, provided however that it was a minor, subordinate purpose, as distinct from a major purpose. To let <u>the employer</u> off even if avoiding such liability was a major purpose would ill serve the statute's goal of preventing <u>one employer</u> from unloading his pension obligations onto the other employers in a multiemployer plan."

[emphasis added]. Yet another case cited by Respondent Pension Fund – <u>Board of Trustees, Sheet Metal Workers' National Pension Fund v. Illinois Range, Inc.</u>, 186 F.R.D. 498 (N.D.Ill. 1999) - also focuses on the intent and purpose of the sellers in a transaction alleged to have the purpose of evading or avoiding withdrawal liability.

There is strong support for the proposition that the Court should not be looking to Petitioner Bright's intention in the asset sale transaction at all. Even if the arbitrator, or the Court, were to do so, the plain language of 29 U.S.C. §1392(c) requires only, after finding that a

15

principal purpose of either DCM or Petitioner Bright in undertaking the asset sale and purchase between them in this case was to evade or avoid withdrawal liability, that the transaction simply be undone and Respondent Pension Fund would be limited in pursuing DCM for any resulting liability.

As a final point, Respondent Pension Fund – and the arbitrator – once again ignored the construction industry exemption in their analysis of this issue. Applying the construction industry exemption, DCM had no withdrawal liability, and therefore there was no liability for either party to seek to evade or avoid. Again, Congress did not include language in the construction industry exemption limiting its application only to cases where the 29 U.S.C. §1392(c) was found not to apply.

## CONCLUSION

For the foregoing reasons, Petitioner prays the Court vacate the arbitration award rendered against Petitioner in this matter, or in the alternative modify the arbitration award rendered against Petitioner in this matter to reflect that Petitioner has no liability to Respondent Pension Fund; Petitioner further prays the Court will deny Respondent Pension Fund's Motion to Confirm and Enforce the Arbitration Award; Petitioner prays the Court for an award of Petitioner's costs and attorneys' fees from Respondent Pension Fund as the prevailing party under the applicable provisions of ERISA and the MPPAA and order further proceedings to determine same; and for such other relief as the Court deems just and proper.

Respectfully submitted,

MONACO, SANDERS, GOTFREDSON,
  RACINE & BARBER, L.C.


/s/ Aaron J. Racine
Aaron J. Racine        MO Bar #48067
1411 E. 104th Street, Suite 100
Kansas City, Missouri 64131-4521
(816) 523-2400
(816) 942-0006 fax
ajracine@kcattorneys.net
ATTORNEY FOR PETITIONER


**CERTIFICATE OF SERVICE**

I, the undersigned, hereby certify that a true and accurate copy of the foregoing was served via electronic delivery to all counsel of record at the time of electronic filing with the Court.

 /s/ Aaron J. Racine
Aaron J. Racine