IN THE UNITED STATES DISTRICT
FOR THE WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

| | |
|---|---|
| BRIGHT CONSTRUCTION, INC. Petitioner, | ) ) ) |
| v. | ) Case No. 4:12-mc-09028-FJG ) |
| CARPENTERS DISTRICT COUNCIL OF KANSAS CITY PENSION FUND and MELMORE CONSTRUCTION, INC. F/K/A DCM CONSTRUCTION, INC., Respondents. | ) ) ) ) ) ) ) |

| | |
|---|---|
| KEITH WINN and DONALD E. GREENWELL, III, TRUSTEES OF THE CARPENTERS DISTRICT COUNCIL OF KANSAS CITY PENSION FUND, a Trust Fund, and CARPENTERS DISTRICT COUNCIL OF KANSAS CITY PENSION FUND, a Trust Fund, Plaintiffs, | ) ) ) ) ) ) ) ) ) ) ) ) |
| v. | ) Case No. 4:13-CV-00181-FJG ) |
| BRIGHT CONSTRUCTION, INC., Defendant. | ) ) ) |

**CARPENTERS DISTRICT COUNCIL OF KANSAS CITY PENSION FUND'S
REPLY SUGGESTIONS IN SUPPORT OF ITS
MOTION TO CONFIRM AND ENFORCE ARBITRATION AWARD**

Bright Construction, Inc. ("Bright") presents three arguments in its Suggestions in Opposition to Carpenters District Council of Kansas City Pension Fund's Suggestion in Support of its Motion to Confirm and Enforce Arbitration Award which the Carpenters District Council of Kansas City Pension Fund ("Fund") will address separately:

### 1. The construction industry exemption of ERISA §4203(b) does not apply and a complete withdrawal did occur.

The stipulated facts in this matter support the Fund's position that a complete withdrawal under ERISA §4203(b)(2) occurred because Bright continued to perform work in the jurisdiction of the subject collective bargaining agreement(s) as a successor to DCM Construction, Inc. ("DCM"). (See, Stipulated Facts, Joint Exhibit 131, Paragraphs 7, 8, and 11). (See, Award, Joint Exhibit 1, Pages 10-12). Upon DCM's ceasing operations Bright began operating, or continued to operate, as the successor to DCM as an employer in the building and construction industry. Therefore, a complete withdrawal did occur under §4203(b)(2). *See **Plumbers and Steamfitters Local No. 150 Pension Fund v. Custom Mechanical CSRA, LLC***, 2009 WL 3294793 (S.D.Ga. 2009), discussing the alter ego/successor doctrine.

Bright contends that, as a matter of law, a complete withdrawal never took place under the building and construction industry exception set forth in ERISA §4203(b)(2) and takes issue with the Arbitrator's Decision Denying Motion to Dismiss. Bright claims that the arbitrator's failure to fully discuss his application of the construction industry exemption renders his Award fundamentally flawed. However, Bright's dislike of the arbitrator's style of writing for his analysis in the Arbitrator's Decision Denying Motion to Dismiss does not make it an improper decision.

The arbitrator analyzed the construction industry exemption and properly disagreed with Bright's position by citing relevant authority addressing the construction industry exemption in successor liability cases. The arbitrator then found that "the Carpenters have presented a claim upon which relief may be granted as to whether withdrawal liability may be imposed." (See, Arbitrator's Decision Denying Motion to Dismiss, Joint Exhibit 130, Pages 3-6). The Arbitrator's Decision Denying Motion to Dismiss indicates that the arbitrator properly viewed his ruling on the applicability of the construction industry exemption to be directly related to successor liability and/or liability under 29 U.S.C. §1392(c).

Specifically, this is clear from the following statements made in the Arbitrator's Decision Denying Motion to Dismiss, "Regardless of the method chosen for seeking to establish successor liability, the underlying inquiry is whether the transaction was intended to avoid withdrawal liability….The only way that can be determined is by holding a hearing with testimony by witnesses." (See, Arbitrator's Decision Denying Motion to Dismiss, Joint Exhibit 130, Page 6). As a result, it is equally clear that the Arbitrator's Decision Denying Motion to Dismiss correctly finds that, if the evidence at the arbitration hearing established successor liability and/or liability under 29 U.S.C. §1392(c), then a complete withdrawal would have occurred and the construction industry exemption would not apply because Bright would be a mere continuance of DCM which continued to perform work in the building and construction industry after DCM ceased to have an obligation to contribute to the Fund.

The facts in the record establish that a complete withdrawal occurred. DCM ceased to have "an obligation to contribute" under the Plan because DCM terminated all employees for which it was obligated to make contributions to the Fund, sold all assets to Bright, and ceased all construction operations. Thereafter, Bright continued to employ DCM's former employees to perform work in the jurisdiction of the Fund, the type for which contributions were previously required to the Fund. Upon DCM's ceasing operations, Bright operated as the successor employer to DCM. (See, Stipulated Facts, Joint Exhibit 131, Paragraphs 7, 8, and 11). (See, Award, Joint Exhibit 1, Pages 10-12). As a result, the stipulated facts in this matter support the arbitrator's finding that a complete withdrawal under ERISA §4203(b)(2) occurred.

The Arbitrator's Decision Denying Motion to Dismiss permitted the Fund to present evidence at a full hearing, which promotes the purposes of the MPPAA. (See, Arbitrator's Decision Denying Motion to Dismiss, Joint Exhibit 130, Page 6). Upon conducting the hearing, the arbitrator agreed with the Fund's position that DCM's actions constituted a termination of its obligation to contribute to the Plan, and operated as a disguised continuance in the form of Bright, causing a withdrawal to occur. (See, Award, Joint Exhibit 1, Pages 10-12).

Bright's attempts to entirely separate the issues of a complete withdrawal from successor liability are merely an attempt to "muddy the waters" and create confusion. The Arbitrator's Decision Denying Motion to Dismiss and the arbitrator's Award, when read together, support the conclusion that the arbitrator properly found that the construction industry exemption analysis cannot be performed separately and without taking successor liability into account. If Bright's proposed approach were correct, the purpose of the MPPAA would be defeated.

Bright claims that since DCM ceased operations and did not continue to perform work in the jurisdiction of the subject collective bargaining agreement, a complete withdrawal did not occur under ERISA §4203(b)(2). This position completely ignores the extensive authority (which was cited in the Fund's brief) holding that the actions and/or liability of DCM and Bright are attributable to one another under a successor liability theory and/or disregard of the subject asset transfer. The Fund clearly established that a complete withdrawal occurred under ERISA §4203(b)(2) because Bright is the successor to DCM, which ceased to have an obligation to the Fund but continued to perform work within the jurisdiction of the Fund and collective bargaining agreement(s) because Bright is a mere successor entity of DCM and/or because the subject asset sale should be avoided under 29 U.S.C. §1392(c). The arbitrator appropriately agreed.

The Fund provided extensive factual and legal authority to support its position that both entities are responsible for withdrawal liability to the Fund under ERISA due to Bright's continued operation as an employer in the building and construction industry. Bright attempts to separate these issues from one another and present the facts in a narrow light which suggests that withdrawal liability cannot be assessed to Bright. Bright further suggests that, as a matter of law, there is no withdrawal liability when the stipulated facts are viewed in such a narrow and isolated manner. The issue of complete withdrawal cannot be viewed in the narrow and isolated manner suggested by Bright. As the authority cited by the Funds provides, the arbitrator properly found that the conduct at hand is attributable to both entities when viewed broadly under ERISA. (See, Award, Joint Exhibit 1, Pages 10-12).

Bright argues that no withdrawal occurred when DCM ceased to have an obligation under the subject collective bargaining agreement(s) after it terminated operations. However, under ERISA §4203(b)(2), the analysis of DCM and Bright's actions does not stop there. The arbitrator correctly found that the stipulated facts show that Bright, as the successor and/or beneficiary of a transaction to evade withdrawal liability, continued substantially the same operations as those engaged in by DCM but merely did so under the cover of a new entity. (See, Award, Joint Exhibit 1, Pages 10-12). As a result, the arbitrator properly found that Bright continued DCM's operations as an employer in the building and construction industry, thus triggering withdrawal liability under ERISA §4203(b)(2).

If Bright's narrow and isolated view of withdrawal liability were an accurate reflection of the law, there could essentially never be a case in which one entity could be found liable for another entity's withdrawal liability under ERISA §4203(b)(2). However, as stated above and outlined in the Fund's brief, there is abundant authority to indicate that the opposite is true and that the conduct of DCM and Bright was properly viewed together as a whole by the arbitrator to determine the appropriate remedies for a complete withdrawal under ERISA §4203(b)(2).

### 2. Successor liability can exist for Bright even if DCM is found to have no liability.

Bright's best argument that it cannot have liability if DCM has no withdrawal liability is to simply state that the Fund and the arbitrator are confused about the law. Specifically, Bright contends, "The construction industry exemption does not read 'except where the successor liability doctrine' has been found to apply." While the Fund agrees that ERISA §4203(b)(2) does not expressly state this, both the law and the Fund disagree with the premise behind Bright's statement. To the contrary, and as stated in its reply to DCM and Bright's Motion to Dismiss as well as in the Fund's brief, the arbitrator correctly found that the purpose of the MPPAA <u>does</u> support such a conclusion. (See, Award, Joint Exhibit 1, Pages 10-12); (See, Carpenters District Council of Kansas City Pension Fund's Reply to DCM Construction, Inc. and Bright

Construction, Inc.'s Brief (April 23, 2012), Joint Exhibit 129); (See, Arbitrator's Decision Denying Motion to Dismiss, Joint Exhibit 130, Page 6).

As stated in the Fund's brief and its reply to the Motion to Dismiss, the facts and circumstances must be viewed as a whole when examining the conduct of the parties involved for purposes of withdrawal liability. The Fund also cited to extensive legal authority supporting this concept in its brief. Bright's best response to the Fund is to attempt to distinguish the facts of only one of the many cases cited by the Fund. However, Bright's attempt to distinguish facts does not defeat the Fund's argument that *courts have consistently found that Bright can be found liable for withdrawal liability without DCM being liable*.

The reality of such a concept is that, as is shown by the facts of several successor cases addressed by courts over the years, the previously obligated predecessor is often long gone (or without assets) by the time the successor begins answering questions about whether it is a mere continuation. In such a situation, which is similar to the situation at hand, there is no pocket for the Fund to reach into in order to collect withdrawal liability. From both a legal and MPPAA policy standpoint, there is no logical reason to assess withdrawal liability against DCM here because DCM is without assets, is no longer operating in the construction industry, and is merely a holding corporation that collects payments from Bright. The arbitrator's finding of withdrawal liability for DCM would have been worth less than the piece of paper upon which it was printed. The arbitrator properly recognized this concern-noting DCM's disposition in comparison with Bright's existence as a continuation of DCM. (See, Award, Joint Exhibit 1, Pages 10-12).

A set of facts like these is exactly the type of situation where the purpose of the MPPAA allows Bright to have successor liability where DCM has no assets to pay withdrawal liability. Assessing withdrawal liability to DCM is futile. The arbitrator correctly recognized this in his interpretation of the authority allowing for such a conclusion. As a result, the arbitrator properly found Bright to be liable in the absence of a finding of withdrawal liability against DCM.

### 3. The evade/avoid analysis of 29 U.S.C. 1392(c) applies to Bright.

Bright maintains that, since it was merely the purchaser of DCM's assets in the subject transaction, it cannot have had any intent to evade or avoid withdrawal liability under the 29 U.S.C. §1392(c) analysis. In so doing, Bright cites **Sun Capital Partners III, LP v. New England Teamsters & Trucking Industry Pension Fund**, 724 F.3d 129 (1st Cir. 2013) for the proposition that 29 U.S.C. §1392(c) can only apply to the seller in a transaction and can *never* apply to the buyer. Once again, Bright's interpretation of **Sun Capital** is too narrow and limited since the **Sun Capital** facts are quite different from the facts of this matter.

**Sun Capital** involved a buyer which was an investment company serving as a middle-man to acquire companies in distress and attempt to sell them for a profit within a few years of its initial acquisition of the troubled company. The buyer was unrelated to the seller prior to the transaction that the plaintiff pension fund sought to avoid. The court found such action inappropriate because, if the transaction were set aside, the parties to the transaction would not be related in any way and it would have done the plaintiff pension fund no good for collection of withdrawal liability. **Sun Capital Partners III, LP v. New England Teamsters & Trucking Industry Pension Fund**, 724 F.3d 129, 149-150.

Here, in contrast to **Sun Capital**, Bright was not purchasing DCM's assets as an innocent and neutral investor. Instead, the entities were closely related. Rick Bright was an employee of DCM, and the principals of DCM and Rick Bright discussed the subject asset sale (and the intimate details of the structure of said sale) on several occasions prior to its consummation. The arbitrator here properly found that evidence presented by the Fund indicated that DCM and Bright were closely related parties who conspired to act together in order to continue operating DCM without having to pay any withdrawal liability to the Fund. (See, Award, Joint Exhibit 1, Pages 10-12).

Unlike **Sun Capital**, setting aside the subject transaction here does not defeat the Fund's purposes. The arbitrator properly found that Bright was the successor to DCM. (See,

Award, Joint Exhibit 1, Pages 10-12). Unlike **Sun Capital**, this relationship exists even if the arbitrator had found that the sham transaction between the parties should not be set aside under 29 U.S.C. §1392(c). The arbitrator properly found that DCM and Bright are essentially different sides of the same coin and are inseparable. Setting aside the transaction under 29 U.S.C. §1392(c) is simply another basis upon which the arbitrator correctly sought to enforce the purpose of the MPPAA and allow the Fund a method from which it could recover from Bright due to Bright acting closely in concert with DCM in an attempt to avoid DCM's withdrawal liability to the Fund. As the arbitrator found, Bright was not an innocent purchaser in this sham transaction.

Regardless of whether the transaction is set aside under **Sun Capital**, the successor liability properly found by the arbitrator still holds Bright liable to the Fund for withdrawal liability. As a result, the arbitrator correctly found Bright liable to the Fund for withdrawal liability as both a successor to DCM and as a result of the sham transaction of 29 U.S.C. 1392(c).

## CONCLUSION

DCM's cessation of operations and Bright's continued operation as a successor entity and/or beneficiary of a transaction, the purpose of which was to evade withdrawal liability, must be viewed together as a whole to find that a complete withdrawal occurred under ERISA §4203(b)(2). The issue of complete withdrawal cannot be viewed in an isolated and narrow manner which does not take into account and apply the facts to the successor/sham transaction analysis. When the facts are viewed as a whole, it is clear that the arbitrator correctly found that Bright was the successor to DCM and Bright continued to operate in the construction industry once DCM ceased its obligation to contribute to the Fund and that the construction industry exemption therefore does not apply. Further, the arbitrator correctly found that it was proper to set aside the sham asset sale under 29 U.S.C. §1392(c) due to the parties being closely related

to one another and seeking to avoid DCM's obligation to the Fund.  As a result this Court should confirm and enforce the arbitrator's award in favor of the Fund.

>Respectfully submitted,
>
>ARNOLD, NEWBOLD, WINTER & JACKSON, P.C.
>
>
>    /s/Michael G. Newbold
>Michael G. Newbold, MO Bar No. 25523
>Paul E. Torlina, MO Bar No. 52798
>1125 Grand Boulevard, Suite 1600
>Kansas City, Missouri  64106
>Telephone:    816-421-5788
>Facsimile:    816-471-5574
>*Attorneys for Carpenters District Council of Kansas City Pension Fund*

**CERTIFICATE OF SERVICE**

I hereby certify that on the 21st day of October, 2013, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which provided a copy to the following:  Aaron J. Racine, MONACO, SANDERS, GOTFREDSON, RACINE & BARBER, L.C. AT ajracine@kcattorneys.net; *Attorney for Plaintiff Bright Construction, Inc.*; and Robert A. West, HAYNES BENEFITS, P.C., at west@haynesbenefits.com, *Attorney for Defendant Melmore Construction, Inc. f/k/a DCM Construction, Inc.*

>    /s/Michael G. Newbold
>Michael G. Newbold