IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

| | | |
|---|---|---|
| BRIGHT CONSTRUCTION, INC. ) | | |
|     Petitioner, ) | | |
| ) | | |
| v. ) | Case No. 4:12-MC-09028-FJG | |
| ) | | |
| ) | | |
| CARPENTERS DISTRICT COUNCIL ) | | |
| OF KANSAS CITY PENSION FUND ) | | |
| and ) | | |
| MELMORE CONSTRUCTION, INC. ) | | |
|     Respondents. ) | | |

_____

| | | |
|---|---|---|
| KEITH WINN and DONALD E. ) | | |
| GREENWELL, III, TRUSTEES OF ) | | |
| THE CARPENTERS DISTRICT ) | | |
| COUNCIL OF KANSAS CITY PENSION ) | | |
| FUND, a Trust Fund, ) | | |
| ) | | |
| and ) | | |
| ) | | |
| CARPENTERS DISTRICT COUNCIL ) | | |
| OF KANSAS CITY PENSION FUND, ) | Case No. 4:13-CV-00181-FJG | |
| a Trust Fund, ) | | |
|     Plaintiffs, ) | | |
| v. ) | | |
| ) | | |
| BRIGHT CONSTRUCTION, INC., ) | | |
|     Defendant. ) | | |

## **ORDER**

Pending before the Court are (1) Petitioner's Motion to Vacate or Modify Arbitration Award Pursuant to 29 U.S.C. § 1401(b)(2) (Doc. No. 1, Case No. 12-9028); (2) Respondent Melmore Construction, Inc., f/k/a DCM Construction, Inc.'s Motion to Confirm Arbitration Award as to DCM Only and Suggestions in Support (Doc. No. 23, Case No. 12-9028); and (3) Carpenters District Council of Kansas City Pension Fund's Suggestions in Support of Motion to Comfirm [sic] and Enforce Arbitration Award

Pursuant to 29 U.S.C. § 1401(b)(2) (Doc. No. 25, Case No. 12-9028).[1] For the reasons set forth below, the Pension Fund's Motion to Confirm the Arbitration Award is denied and Bright's Motion to Vacate the Arbitration Award is granted. Furthermore, as neither Bright nor the Pension Fund have filed any objections to Respondent Melmore Construction, Inc.'s motion to confirm arbitration award, and the time for filing any objections has passed, Melmore Construction, Inc.'s motion (Doc. No. 23) will be **GRANTED**.

I. **Background.**

On February 23, 2011, Carpenters District Council of Kansas City Pension Fund (Pension Fund) made an assessment of withdrawal liability[2] against DCM Construction, Inc. (DCM) and Bright Construction, Inc. (Bright). The Pension Fund alleged that a

---

[1] The Pension Fund's motion to confirm arbitration award is contained within its complaint (Doc. No. 1) filed in Case No. 13-0181.

[2]  Under ERISA, "an employer withdrawing from a multiemployer pension plan [is required to] pay a fixed certain debt to the pension plan." <u>Trustees of Colorado Pipe Industry Pension Trust v. Howard Electrical & Mechanical Inc.</u>, 909 F.2d 1379, 1383 (10th Cir.1990). This fixed debt is referred to in the statute as withdrawal liability, and was enacted under the Multiemployer Pension Plan Amendment Act (MPPAA). The withdrawal liability under ERISA is established under 29 U.S.C. § 1381, and states "[i]f an employer withdraws from a multiemployer plan in a complete withdrawal or a partial withdrawal, then the employer is liable to the plan in the amount determined under this part to be the withdrawal liability." Furthermore, the MPPAA states that "[a]ny dispute between an employer and the plan sponsor of a multiemployer plan concerning a determination made under sections 1381 through 1399 of this title shall be resolved through arbitration...." 29 U.S.C. § 1401(a).

<u>Am. Cleaners & Laundry Co. Inc. v. Textile Processors, Serv. Trades, Health Care Prof'l & Technical Employees Int'l Union Local 161</u>, 482 F. Supp. 2d 1103, 1116 (E.D. Mo. 2007)

complete withdrawal was made during the Plan Year ending March 31, 2011. The Pension Fund further maintained that a sale of assets by DCM to Bright was not an arms-length transaction. The Pension fund assessed joint and several liability in the amount of $710,106.00.

On April 12, 2011, DCM and Bright filed a joint response denying liability. Thereafter, a request for arbitration was jointly filed by the parties, and was received by the American Arbitration Association ("AAA") on October 10, 2011. Mark D. DeBofsky was appointed as arbitrator, and the parties stipulated to an agreed statement of facts. (Doc. No. 26, Joint Exhibit 131).

DCM and Bright moved to dismiss the Pension Fund's claim for withdrawal liability, arguing that there was no withdrawal because DCM sold its assets to a *bona fide* purchaser (whereas the Pension Fund maintained that Bright was the alter ego of DCM or was otherwise subject to successor liability). DCM and Bright also argued that no withdrawal could have occurred under the construction exemption to the Multiemployer Pension Plan Amendments Act of 1980 ("MPPAA"), 29 U.S.C. § 1383(b).[3] The arbitrator denied the motion to dismiss on May 18, 2012, finding

---

[3] The building and construction industry exemption (29 U.S.C. § 1383(b)) provides:

> **(1)** Notwithstanding subsection (a) of this section, in the case of an employer that has an obligation to contribute under a plan for work performed in the building and construction industry, a complete withdrawal occurs only as described in paragraph (2), if--
> **(A)** substantially all the employees with respect to whom the employer has an obligation to contribute under the plan perform work in the building and construction industry, and
> **(B)** the plan--
> **(i)** primarily covers employees in the building and construction industry, or
> **(ii)** is amended to provide that this subsection applies to employers described in this paragraph.
> **(2)** A withdrawal occurs under this paragraph if--

questions of fact remained as to whether the transaction was intended to avoid withdrawal liability, and finding that the only way to resolve the claim would be to receive additional evidence, including the testimony of witnesses.  See Arbitrator's Decision Denying Motion to Dismiss, Doc. No. 26, Ex. 130.  The arbitrator made no finding in this decision as to whether the construction industry exemption to the MPPAA applied under the facts of this case. See id.

Thereafter, a hearing was held on October 25, 2012, wherein additional facts were adduced.  Following that hearing, the arbitrator entered an award on November 21, 2012, finding (1) the evidence does not establish that DCM and Bright are alter egos of one another (see Doc. No. 1-1, p. 9); (2) Bright is liable for withdrawal liability under the successor liability doctrine, as the buyer had notice of the liability prior to the sale, and there is sufficient evidence of the continuity of operations between the buyer and seller (see Doc. No. 1-1, pp. 10-11); and (3) even though Bright is liable through the successor liability doctrine, DCM (the predecessor company) is not liable as the predecessor lacked sophistication or knowledge of withdrawal liability, had no desire to discontinue union representation, and no longer had assets (see Doc. No. 1-1, pp. 11-12).  Even though the arbitrator mentioned the construction industry exemption as an issue presented by the parties (see Doc. No. 1-1, p. 8), the arbitrator did not analyze whether the construction industry exemption applied under the facts of this case.

---

    **(A)** an employer ceases to have an obligation to contribute under the plan, and
    **(B)** the employer—
    **(i)** continues to perform work in the jurisdiction of the collective bargaining agreement of the type for which contributions were previously required, or
    **(ii)** resumes such work within 5 years after the date on which the obligation to contribute under the plan ceases, and does not renew the obligation at the time of the resumption.

The arbitrator's award is now before the Court on the parties' motions.

## II.     Facts

DCM was incorporated as a Kansas corporation on January 3, 2003. Steve Moore ("Steve") formed DCM in January 2003. The initial sole shareholder in the corporation was Steve's lifelong friend, David C. Melcher, who was the sole officer, director, and shareholder of DCM. Steven became DCM's operations manager and began doing business and secured contractors' licenses and permits in the name of DCM Construction, Inc. Melcher was responsible for DCM's business operations.

DCM signed a Kansas City Residential Contract Stipulation ("Stipulation") dated January 22, 2003, agreeing to be bound to the terms and conditions of the Residential Labor Agreement ("Residential Labor Agreement") then in effect, and all subsequent agreements, between the United Brotherhood of Carpenters and Joiners of America, and the Carpenters District Council of Kansas City & Vicinity, AFL-CIO and the Builders' Association of Missouri. The Residential Labor Agreement in effect at the time that DCM signed the Stipulation was effective the dates April 1, 2003 through March 31, 2005. DCM also signed an Agreement for Voluntary Recognition on January 22, 2003 ("Voluntary Recognition Agreement") wherein it agreed that a majority of its bargaining unit employees authorized the Carpenters District Council of Kansas City & Vicinity, AFL-CIO, to represent DCM's employees for collective bargaining purposes. The Residential Labor Agreement has been renewed by the United Brotherhood of Carpenters and Joiners of America, and the Carpenters District Council of Kansas City & Vicinity, AFL-CIO and the Builders' Association of Missouri for the periods beginning April 1, 2005 through March 31, 2009, and April 1, 2009 through March 31, 2013. By virtue of being a signatory employer to the Residential Labor Agreement, DCM has

been obligated to make payments to the Carpenters District Council of Kansas City Pension Fund since January 22, 2003. The arbitrator found that DCM's employees perform work in the building and construction industry as described in ERISA Section 4203(b) (29 U.S.C. § 1383(b)); and the Pension Fund is a pension plan that primarily covers employees in the building and construction industry.

Melcher and Steve had an agreement whereby Steve would receive 80% of DCM's profits while Melcher would receive 20%. Steve was married to Denise Moore ("Denise"), a registered nurse. DCM was a successful business that was primarily engaged in high-end residential remodeling. Steve had a number of health issues, however, and his health significantly declined beginning in 2009. As Steve's health declined, Denise took on a greater role with the business. In 2009, Denise was made a 40% shareholder in DCM, and her stake in the ownership in DCM increased to 80% in 2009 in order to reflect the oral agreement between Steve and Melcher with respect to the profit distributions. As DCM grew, its business headquarters moved from Steve and Denise's home to a new location which was leased in a building owned by Denmor LLC, a company in which Denise was the sole member.

The decline in Steve's health precipitated concern about whether DCM could be maintained as an ongoing business, as without him, Denise and Melcher were not capable of maintaining the business. In 2010, a decision was made to try to find a buyer for the business. Richard Bright ("Bright"), an employee of DCM's since 2006, was identified as a potential purchaser, and the Moores and Melcher began exploring a sale of the company to him. In the late winter and spring of 2010, the parties began to come to terms on the sale. The Moores and Melcher preferred a stock sale, but Bright was insistent on an asset purchase agreement. Because Bright lacked the means to

pay cash, the parties agreed that he would purchase DCM's assets with a $150,000 promissory note. In addition, he would receive a $100,000 loan for operating expenses. Bright personally guaranteed the operating expense loan but not the promissory note. The closing of the sale was delayed because Steve passed away in March 2010.

Bright Construction, Inc. was incorporated as a Missouri corporation on June 10, 2010. The sale of DCM closed on August 11, 2010 when the parties executed an "Asset Purchase Agreement" and DCM executed a bill of sale. Immediately thereafter, DCM ceased its business operations, and submitted a formal report to the Kansas Department of Revenue of its cessation of business. DCM Construction Inc. changed its name to Melmore Construction, Inc., which was established for the purpose of collecting DCM's retained accounts receivable and to collect Bright's payments under the asset purchase agreement. However, the DCM name continued in existence. Among the assets purchased was the name "DCM," and projects that had been started by DCM but were not completed were taken over by Bright, which had established a corporate entity, Bright Construction, Inc. Bright continued to use DCM as an assumed name, and several contractor licenses taken out by Bright used the DCM name. Bright also occupied the DCM premises, continuing to pay rent to Denmor.

Following the asset purchase agreement, DCM ceased making contributions to the Pension Fund on August 31, 2010. At that time, DCM's contributions were completely up to date and there are no claimed delinquencies. Since the sale, Denise has worked for Bright in an administrative capacity on a part-time basis. However, she has no ownership in Bright, and is neither a director nor an officer, nor does she have any managerial responsibilities. When Bright began, most of its carpenters had been DCM employees. A substantial number of Bright's customers were DCM's customers,

although Bright has added some additional customers and taken on different types of work than the work performed by DCM. There is also a substantial overlap in vendors between the two entities. DCM has not affirmatively nor expressly cancelled the Stipulation, the Residential Labor Agreement, or the Voluntary Recognition Agreement, nor has it otherwise repudiated its obligations under any collective bargaining agreement with the Carpenters District Council of Kansas City & Vicinity and the Builder's Association of Missouri.

## III. Standard

Under the Multiemployer Pension Plan Amendments Acts of 1980 ("MMPPA"), the Court reviews the arbitrator's legal findings *de novo.* Union Asphalts & Roadoils, Inc. v. MO-KAN Teamsters Pension Fund, 857 F.2d 1230, 1233 (8th Cir. 1988). "[T]he district court must accept the arbitrator's findings of fact as correct unless rebutted by a clear preponderance of the evidence." Id. Throughout the proceedings, the plan's determination of liability is presumed correct unless the party contesting the determination can establish by a preponderance of the evidence that the determination is unreasonable or clearly erroneous. 29 U.S.C. § 1401(a)(3)(A).

## IV. Pending Motions

Bright makes numerous arguments in its motion to vacate or modify arbitration award (Doc. No. 1), but the Court finds two of those arguments persuasive. First, Bright argues the award is irrational and against public policy as liability was assessed against Bright as DCM's successor, but the award specifically found that DCM had no liability for a withdrawal, and successors can have no liability by virtue of being a successor when the predecessor has none. Second, Bright argues that the construction industry exemption was not analyzed by the arbitrator.

A. Successor Liability

Bright argues that the arbitrator incorrectly found it to be liable under the successor liability doctrine. The Pension Fund responds, with respect to the successor liability doctrine, that the arbitrator correctly applied the law, which is "to hold a successor liable we must find that there exist sufficient indicia of continuity between the two companies and that the successor firm had notice of its predecessor's liability." Upholsterers' Int'l Union Pension Fund v. Artistic Furniture of Pontiac, 920 F.2d 1323, 1329 (7th Cir. 1990).

In Bright's reply suggestions (Doc. No. 28), Bright indicates that the arbitrator correctly found (1) the alter ego theory of liability was baseless; and (2) DCM was not liable for its own withdrawal liability, as there was no intent to structure the sale of DCM's assets to evade or avoid withdrawal liability. Bright further argues, however, that the arbitrator's decision was incorrect as (1) the arbitrator made no finding whatsoever on the issue of whether the "construction industry exemption" found in 29 U.S.C. § 1383 is an absolute defense to the Pension Fund's claims; and (2) the arbitrator found that Bright was liable as a successor in interest to DCM, despite finding that DCM had no withdrawal liability itself.

As noted by Bright, in the cases cited by the arbitrator and the Pension Fund, before the successor can be found to be liable, there has to have been a finding of liability on the part of the predecessor. See Chicago Truck Drivers, Helper and Warehouse Union Workers Union Pension Fund v. Tasemkin, 59 F.3d 48, 49-50 (7th Cir. 1995) (predecessor's liability had already been acknowledged as part of a bankruptcy proceeding); Central States, Southeast and Southwest Areas Pension Fund v. Ehlers Dist., Inc., Case No. 11C2691, 2012 WL 2726759 at *1 (N.D. Ill July 8, 2012)

(predecessor had been found liable for withdrawal liability in a civil proceeding, and then its assets were sold after entry of judgment); Central States, Southeast and Southwest Areas Pension Fund v. TAS Investment Co. LLC, Case No. 11-CV-2991, 2013 WL 1222042 at *1, 10 (N.D. Ill., March 25, 2013) (where predecessor had been found liable, successor who was assigned certain assets was potentially liable); Central States, Southeast and Southwest Areas Pension Fund v. Hayes, 789 F.Supp. 1430, 1435-36 (7th Cir. 1992) (new employer was liable as a successor for old employer's withdrawal liability); Upholsterers' Int'l Union Pension Fund v. Artistic Furniture of Pontiac, 920 F.2d 1323, 1325 (7th Cir. 1990) (liability of predecessor was established by judgment entered two years prior to litigation regarding successor liability); Einhorn v. M.L. Ruberton Constr. Co., 632 F.3d 89, 95-96 (3d Cir. 2011) (finding a successor could be liable for predecessor's acknowledged delinquent ERISA fund contributions); Automotive Industries Pension Trust Fund v. Sough City Ford, Inc., No. C11-04590 CW, 2012 WL 1232109, *2-3 (N.D. Cal. April 12, 2012) (finding that successor possibly could be liable for predecessor's potential withdrawal liability). Here, the arbitrator specifically found there was no liability on the part of the predecessor, so it is unclear to this Court how successor liability could be imposed under these circumstances.

The Pension Fund further argues that it makes sense to assess successor liability against Bright even though DCM was not found liable, because in many cases the predecessor is long gone or without assets by the time withdrawal liability is assessed—in other words, a finding of withdrawal liability against DCM "would have been worth less than the piece of paper upon which it was printed." Notably, the Pension Fund does not cite any cases where the predecessor company was specifically

10

found not liable and a successor company found liable for the predecessor's actions using the doctrine of successor liability.

The Court finds the arbitrator's decision to find Bright (a company that had not signed any contract with the union) liable under the doctrine of successor liability is unsupportable and irreconcilable with the arbitrator's decision that DCM was not liable for its own withdrawal liability. On this basis, the Court must vacate the arbitration award.

B. Construction Industry Exemption

Bright argues that the arbitrator conducted no analysis into the issue of whether the "construction industry exemption" found in 29 U.S.C. § 1383 is a defense to the Pension Fund's claims. The Pension Fund argues in its suggestions in support of its motion to confirm (Doc. No. 25) that the stipulated facts support its position that the construction industry exemption does not apply. Furthermore, in its reply suggestions in support of its motion to dismiss (Doc. No. 29), the Pension Fund argues that the arbitrator's failure to discuss and apply the construction industry exemption to the facts of this case is not error, as, "Bright's dislike of the arbitrator's style of writing for his analysis in the Arbitrator's Decision Denying Motion to Dismiss does not make it an improper decision." Doc. No. 29, p. 2.

The Court finds that the arbitrator's decision in this matter is legally flawed. The arbitrator's failure to explicitly analyze the construction industry exemption is more than a problem with "style of writing"; the arbitrator simply did not consider whether the construction industry exemption applied under the facts of this case, and the Court will not attempt to fill in the blanks so as to support the arbitrator's decision when the arbitrator made no attempt to conduct the analysis. See Bd. of Trustees, Sheet Metal

Workers' Nat. Pension Fund v. Palladium Equity Partners, LLC, 722 F. Supp. 2d 854, 874-75 (E.D. Mich. 2010) (collecting cases wherein district courts have held that the construction industry exemption is subject to the MPPAA's mandatory arbitration requirement). Here, although the parties stipulated to certain facts, there were no stipulations or analysis as to whether the employer ceased to have an obligation under the Plan and whether the employer continued to perform (or resumed performing) work under the jurisdiction of the collective bargaining agreement. See 29 U.S.C. § 1383(b)(2).

Therefore, because the arbitrator failed to consider the construction industry exception and performed a faulty analysis of the application of successor liability, Petitioner Bright's Motion to Vacate or Modify Arbitration Award Pursuant to 29 U.S.C. § 1401(b)(2) (Doc. No. 1, Case No. 12-9028) is **GRANTED**, and Carpenters District Council of Kansas City Pension Fund's Suggestions in Support of Motion to Comfirm [sic] and Enforce Arbitration Award Pursuant to 29 U.S.C. § 1401(b)(2) (Doc. No. 25, Case No. 12-9028) is **DENIED.**

    C.    Respondent DCM Construction, Inc.'s Motion to Confirm Arbitration Award as to DCM Only and Suggestions in Support (Doc. No. 23, Case No. 12-9028)

Respondent DCM Construction, Inc. filed a motion to confirm the arbitration award as to DCM only (Doc. No. 23). No party to the underlying arbitration filed a motion to vacate or confirm the award as to DCM within 30 days of the date of the arbitration award. See 29 U.S.C. § 1401(b)(2) (requiring parties to bring an action to enforce, vacate, or modify arbitration award no later than 30 days after the issuance of the arbitrator's award). Nor did any party to this action file opposition to DCM

Construction, Inc.'s motion to confirm the arbitration award (Doc. No. 23). Therefore, for good cause shown and no opposition indicated, DCM Construction, Inc.'s motion to confirm the arbitration award as to it (Doc. No. 23) is **GRANTED**.

## V.     Conclusion

Therefore, for the foregoing reasons, (1) Petitioner's Motion to Vacate or Modify Arbitration Award Pursuant to 29 U.S.C. § 1401(b)(2) (Doc. No. 1, Case No. 12-9028) is **GRANTED**; (2) Respondent Melmore Construction, Inc., f/k/a DCM Construction, Inc.'s Motion to Confirm Arbitration Award as to DCM Only and Suggestions in Support (Doc. No. 23, Case No. 12-9028) is **GRANTED**; and (3) Carpenters District Council of Kansas City Pension Fund's Suggestions in Support of Motion to Comfirm [sic] and Enforce Arbitration Award Pursuant to 29 U.S.C. § 1401(b)(2) (Doc. No. 25, Case No. 12-9028) is **DENIED.**

Bright and the Pension Fund are directed to reopen the arbitration proceedings to allow Bright the opportunity to have a full hearing on its defenses consistent with this Order.

As both of the above-captioned actions have been dealt with in their entirety, they shall both be marked as closed.

**IT IS SO ORDERED.**

Date: May 5, 2014  
Kansas City, Missouri

**S/ FERNANDO J. GAITAN, JR.**  
Fernando J. Gaitan, Jr.  
United States District Judge

13